★ JUN 29 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

      Plaintiff,

   -against-

BROOKLYN SLEEP PRODUCTS, INC.,
and FRANCISCO CHAVEZ,

      Defendants.
------------------------------------------------------------------X

COMPLAINT

Civil Action No.

**MAUSKOPF, J.**

**POLLAK. M.J**

Plaintiff, the UNITED STATES OF AMERICA, by its attorney, Loretta E. Lynch, United States Attorney for the Eastern District of New York, James R. Cho, Assistant U.S. Attorney, of counsel, alleges for its Complaint as follows:

## I. INTRODUCTION

1. This statutory injunction proceeding is brought under the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051-2084, and the equitable authority of this Court, to enjoin and restrain Brooklyn Sleep Products, Inc. ("Brooklyn Sleep"), and Francisco Chavez ("Chavez") (collectively, "Defendants"), from violating: (a) Section 2068(a)(1) of the CPSA by selling, offering for sale, manufacturing for sale, or distributing in commerce any consumer product that is regulated under the Flammable Fabrics Act ("FFA"), 15 U.S.C. §§ 1191-1204, and is not in conformity with any rule, regulation, or standard under any Act; and (b) Section 1192 of the FFA by (1) manufacturing for sale, selling, or offering for sale, in commerce, or introducing, delivering for introduction, transporting or causing to be transported, in commerce, or selling or delivering after a sale or shipment in commerce, of any product, fabric, or related material which fails to conform to an applicable standard or regulation under Section 1193 of the

FFA, and (2) manufacturing for sale, selling, or offering for sale, of any product made of fabric or related material which fails to conform to an applicable standard or regulation under Section 1193 of the FFA, and which has been shipped or received in commerce.

## II. THE PARTIES

2. Plaintiff United States of America is the sovereign and body politic.

3. Brooklyn Sleep is a corporation organized and existing under the laws of New York. Its principal place of business is located at 431 Kent Avenue, Brooklyn, New York 11211.

4. Chavez is the president of Brooklyn Sleep and, as such, is the individual responsible for the acts and practices of Brooklyn Sleep, including its compliance with the requirements of the CPSA and FFA and the regulations issued thereunder. At all times relevant to this Complaint, Chavez knew of, and had authority to control, the acts and practices of, Brooklyn Sleep.

5. Defendants manufacture and renovate mattresses at the Brooklyn Sleep facility located at 431 Kent Avenue, Brooklyn, New York 11211.

6. The mattresses manufactured or renovated by Defendants are subject to the requirements of the FFA, the CPSA, and the regulations issued thereunder.

7. The mattresses manufactured or renovated by Defendants are sold in interstate commerce, including to retailers located in New Jersey, Massachusetts, and Rhode Island.

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 2071(a) and 2076(c) and 28 U.S.C. §§ 1331, 1337, and 1345.

9. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).

## IV. STATUTORY FRAMEWORK

### A. THE CONSUMER PRODUCT SAFETY ACT

10. The Consumer Product Safety Commission ("Commission") is an independent federal regulatory agency that enforces both the CPSA and the FFA.

11. The CPSA was passed in part to protect the public against unreasonable risk of injury from consumer products. *See* 15 U.S.C. § 2051.

12. The CPSA makes it unlawful for any person to sell, offer for sale, manufacture for sale, or distribute in commerce any consumer product, or other product or substance that is regulated under the CPSA or any other Act enforced by the Commission, including the FFA, that does not comply with applicable consumer product safety rules under the CPSA, or any similar rule, regulation, or standard under any other Act enforced by the Commission, including the FFA. *See* 15 U.S.C. §§ 2068(a)(1), 2079(b).

13. Under 15 U.S.C. § 2071(a)(1), the United States District Court has jurisdiction to restrain any violations of 15 U.S.C. § 2068(a)(1).

### B. THE FLAMMABLE FABRICS ACT

14. Pursuant to Sections 1192 and 1193 of the FFA, 15 U.S.C. §§ 1192, 1193, the Commission has promulgated flammability standards and regulations that apply to mattresses and mattress sets. *See* 16 C.F.R. §§ 1632-1633 (Standard for the Flammability of Mattresses and Mattress Pads and Standard for the Flammability (Open Flame) of Mattress Sets) ("federal flammability standards").

15. The FFA prohibits the manufacture for sale, the sale, or the offering for sale, in commerce, or the introduction, delivery for introduction, transportation or causing to be

3

transported, in commerce, or the sale or delivery after a sale or shipment in commerce, of any product, fabric, or related material which fails to comply with applicable flammability standards or regulations. *See* 15 U.S.C. § 1192(a).

16. The FFA also prohibits the manufacture for sale, the sale, or the offering for sale, of any product made of fabric or related material which fails to comply with applicable flammability standards or regulations and which has been shipped or received in commerce. *See* 15 U.S.C. §§ 1192(b), 1193.

17. The FFA defines a "fabric" as "any material . . . which is intended for use or which may reasonably be expected to be used, in any. . . interior furnishing." 15 U.S.C. §§ 1191(f), (h).

18. Defendants' mattresses are made in whole or part of materials which are considered "fabric" within the meaning of 15 U.S.C. §§ 1191(f), (h).

19. The FFA defines a "related material" as any paper, plastic, rubber, synthetic film, or synthetic foam which is intended for use or which may reasonably be expected to be used in any . . . interior furnishing." 15 U.S.C §§ 1191(g), (h).

20. Defendants' mattresses are made in whole or part of materials which are "related material[s]" within the meaning of 15 U.S.C. §§ 1191(g), (h).

21. An "interior furnishing" is any type of furnishing made in whole or in part of fabric or related material and intended for use or which may reasonably be expected to be used in homes or other places of accommodation. *See* 15 U.S.C. § 1191(e).

22. Defendants manufacture mattresses and mattress sets that are considered "interior furnishing[s]" within the meaning of 15 U.S.C. § 1191(e), and those mattresses and mattress sets

4

are governed by 16 C.F.R. §§ 1632.1(a), 1633.2(a), and 1633.2(c).

23. Under the FFA and federal flammability standards, mattresses must pass certain criteria when undergoing flammability tests as set forth in 16 C.F.R. § 1633.3(b).

24. The peak heat released from the mattresses, when ignited, must not exceed 200 kilowatts ("kW") at any time during the duration of the 30 minute flammability test and the total heat released must not exceed 15 megajoules ("MJ") for the first 10 minutes of the test. *See* 16 C.F.R. § 1633.3(b).

## V. FACTS

### A. INSPECTION OF BROOKLYN SLEEP

25. On July 23, 2008, Commission investigators conducted an unannounced inspection of Defendants' Brooklyn facility.

26. Chavez informed the investigators that he was not familiar with the federal flammability regulations (*i.e.*, 16 C.F.R. §§ 1632 and 1633).

27. Investigators gave Chavez a copy of the federal flammability regulations.

28. During the inspection, a set of Defendants' brand new Model 700 mattress and a set of the Defendants' renovated Model 700 mattress were randomly selected and submitted for flammability testing.

29. During the July 2008 inspection, Chavez told investigators that Brooklyn Sleep did not conduct tests of any of its mattresses or prototype mattresses.

30. Chavez informed investigators that he did not have records of any such test.

31. On or about August 14 and 15, 2008, the Commission conducted flammability tests on Defendants' mattresses collected at the Brooklyn Sleep facility on July 23, 2008.

5

32. Defendants' mattresses failed the flammability tests.

33. The peak heat released by the mattresses, when ignited, far exceeded the 200 kW minimum threshold permitted under the flammability regulations. The peak heat release tests results were 456.4, 293.8, 1778.5, and 1034.3 kW.

34. The total heat release test results far exceeded the 15 MJ threshold permitted under the flammability regulations. The results were 46.69, 42.7, 55.24, and 39.3 MJ.

35. The mattresses collected did not have the required federal label.

36. On September 12, 2008, the Commission sent Defendants a letter of advice ("LOA") requesting that they take immediate corrective action.

37. The LOA informed Defendants that they were not in compliance with the flammability standards, and the testing, recordkeeping, labeling, and quality assurance requirements set forth in 16 C.F.R. §§ 1632, 1633.

38. The Commission requested that Defendants refrain from selling and distributing their mattresses until they complied with the regulations and requested that Defendants respond to the LOA in writing. Defendants did not respond to the September 2008 LOA.

39. Because Defendants failed to respond to the Commission's September 2008 LOA, Commission staff contacted Chavez on December 4, 2008.

40. During a telephone call with Commission staff, Chavez admitted receiving the September 2008 LOA and acknowledged that he was aware of the federal flammability standards. Chavez admitted that he had continued selling mattresses after the last inspection.

41. Investigators conducted a follow-up inspection of Defendants' facility on December 5, 2008.

6

42. During the December 2008 inspection, Chavez admitted receiving the September 2008 LOA, being advised by investigators of the applicable flammability standards, and that he continued to sell mattresses after the first inspection in July 2008.

43. The Commission sent Defendants a second LOA on or about January 30, 2009 reminding them that their conduct violated the flammability standards and regulations, and ordering Defendants to take steps to ensure compliance with the federal flammability regulations.

44. On or about March 4, 2009, the Commission received a letter from Defendants stating that they were in compliance with federal flammability laws and that they had stopped selling defective mattresses.

45. In response to Defendants' letter, on or about April 30, 2009, the Commission issued a "Subpoena and Special Order" to Defendants as part of its investigation and to confirm that Defendants were complying with the federal flammability standards and regulations.

46. The Commission requested that Defendants respond to a series of questions and produce documents relating to all testing, prototypes, and quality assurance records relating to their mattresses.

47. On or about May 13, 2009, Defendants sent to the Commission test results from "The Govmark Organization, Inc.," dated March 21, 2009, that purport to depict the results of flammability tests of two of Defendants' prototype models.

48. One style of Defendants' mattresses passed the flammability tests, while the other model failed.

49. The model 950 prototype failed with a peak heat release of 203 kW.

50. The Commission determined that Defendants had provided inadequate responses

7

and failed to respond to certain questions in the subpoena. The Commission advised Defendants of their deficient subpoena responses in a letter dated August 27, 2009.

51. Defendants never responded to the Commission's August 2009 letter.

## B. INSPECTIONS OF RETAILERS SELLING DEFENDANTS' MATTRESSES

52. During an inspection of one of Defendants' retail customers located in Providence, Rhode Island on or about December 23, 2008, a Commission investigator collected two random samples of Defendants' mattresses.

53. On or about March 5, 2009, Commission staff conducted flammability tests of Defendants' mattresses collected at the Rhode Island retail store. Defendants' mattresses failed the flammability tests.

54. Both of Defendants' mattresses collected from the Rhode Island store exceeded the 200 kW peak heat release threshold with test results of 205.2 and 917.62 kW. One of the mattresses exceeded the total heat release threshold of 15 MJ with a test result of 33 MJ.

55. Defendants had failed to affix the appropriate label to the mattresses collected from the Rhode Island retail store. One of the mattresses had a blank label that failed to include the date of manufacture, model number, or prototype identification number. The other mattress was missing its label. The inspection further revealed that 15 of the Defendants' mattresses at the retail store had either no federal label or an incomplete label.

56. During an inspection of one of Defendants' retail customers located in Fall River, Massachusetts on or about December 23, 2008, a Commission investigator collected random samples of Defendants' mattresses.

57. The samples consisted of two units of a 10-inch, double sided, quilt top mattress

with ivory tone on tone floral pattern ticking and wavy quilting.

58. On or about March 5, 2009, Commission staff conducted flammability tests of Defendants' mattresses collected from the Massachusetts retail store.

59. Both of Defendants' mattresses collected from the Massachusetts retail store failed the flammability tests. Both mattresses exceeded the 200 kW peak heat release threshold with test results of 479.42 and 570.26 kW. Both mattresses exceeded the total heat release threshold of 15 MJ with test results of 27.26 and 27.57 MJ.

60. Defendants had also failed to affix the requisite federal label to the mattresses collected from the Massachusetts retail store.

61. The Commission sent Defendants a third LOA on or about November 16, 2009 advising Defendants of the violations with respect to the federal flammability standards, the labeling requirement from the mattresses obtained from Defendants' retail customers in Rhode Island and Massachusetts. As a result of the violations, the Commission ordered Defendants to stop selling their defective mattresses, to correct the mattress labels, to conduct required prototype testing, and to maintain complete testing, prototype, and quality assurance records.

62. Defendants failed to respond to the Commission's third LOA.

63. On February 19, 2010, a Commission investigator collected mattress samples from three of Defendants' retail customers in New Jersey.

64. On February 25, 2010, the Commission conducted flammability tests on the samples collected and one of Defendants' mattresses failed to meet the minimum federal flammability standards.

65. The mattress from the New Jersey retail store that failed had a peak heat release

9

reading of 287.11 kW and a total heat release reading of 79.56 MJ.

66. The mattress collected from the New Jersey retail store that failed the flammability test also lacked the required federal label.

67. As a result of the violations from the 2010 inspections, on or about March 24, 2010, the Commission sent Defendants a fourth LOA advising them of the ongoing violations. The Commission ordered Defendants to stop selling their defective mattresses, to correct the mattress labels, to conduct required prototype testing, and to maintain complete testing, prototype, and quality assurance records.

68. To date Defendants have not responded to the Commission's fourth LOA.

### FIRST CLAIM FOR RELIEF: DEFENDANTS' MATTRESSES VIOLATE FLAMMABILITY STANDARDS

69. Plaintiff repeats each and every allegation contained in numbered paragraphs 1-68 of this Complaint as if fully set forth herein.

70. Under the CPSA, FFA and regulations issued thereunder, mattresses and mattress sets must meet the flammability test criteria set forth in 16 C.F.R. § 1633.3(b).

71. Since 2008, Defendants have manufactured, renovated, sold, offered for sale, and otherwise introduced into commerce mattresses and mattress sets that fail flammability tests in violation of the FFA and the CPSA, 15 U.S.C. §§ 1192 and 2068(a)(1) as identified and set forth above in paragraphs 31, 32, 33, 34, 54, 59, 64, and 65. Upon information and belief, these violations are ongoing.

72. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 15 U.S.C. § 2071(a)(1) and 15 U.S.C. § 2068(a)(1).

10

## SECOND CLAIM FOR RELIEF: DEFENDANTS FAILED TO TEST MATTRESS PROTOTYPES

73. Plaintiff repeats each and every allegation contained in numbered paragraphs 1-68 of this Complaint as if fully set forth herein.

74. Under the CPSA, FFA and regulations issued thereunder, mattress prototypes must undergo testing to assure compliance with the federal flammability standards of 16 C.F.R. § 1633.3(b) before mattresses are offered for sale or introduced into commerce. *See* 16 C.F.R. § 1633.4(a).

75. During an inspection on July 23, 2008 of Defendants' facility, Chavez informed Commission investigators that Defendants had not conducted tests of any mattress prototypes.

76. Defendants failed to conduct the necessary prototype testing before offering mattresses for sale and introducing them into commerce in violation of 16 C.F.R. § 1633.4(a) as identified and set forth above in paragraph 29.

77. Defendants have manufactured, sold, offered for sale, and otherwise introduced into commerce mattresses from sets for which no prototype flammability testing was conducted in violation of the FFA and the CPSA, 15 U.S.C. §§ 1192 and 2068(a)(1), as identified and set forth above in paragraph 29. Upon information and belief, these violations are ongoing.

78. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 15 U.S.C. § 2071(a)(1) and 15 U.S.C. § 2068(a)(1).

## THIRD CLAIM FOR RELIEF: DEFENDANTS FAILED TO CONDUCT IGNITION RESISTANCE TESTS ON PROTOTYPE MATTRESSES

79. Plaintiff repeats each and every allegation contained in numbered paragraphs 1-68 of this Complaint as if fully set forth herein.

80. Under the CPSA, FFA and regulations issued thereunder, mattress prototypes must undergo testing to assure compliance with the ignition resistance requirements set forth in 16 C.F.R. § 1632 before the mattress is offered for sale or introduced into commerce. *See* 16 C.F.R. § 1632.3. This test entails exposing the mattress surface to lighted cigarettes. *See* 16 C.F.R. § 1632.3.

81. On July 23, 2008, Chavez informed Commission investigators that Defendants had not conducted any testing on any of Defendants' mattress prototypes.

82. Defendants failed to conduct the necessary prototype testing as required before offering mattresses for sale and introducing them into commerce in violation of 16 C.F.R. § 1632.3 as identified and set forth above in paragraph 29.

83. Defendants continue to manufacture, sell, offer for sale, and otherwise introduce into commerce mattresses for which no prototype ignition resistance testing was performed, in violation of the FFA and the CPSA as identified and set forth above in paragraph 29. *See* 15 U.S.C. §§ 1192 and 2068(a)(1). Upon information and belief, these violations are ongoing.

84. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 15 U.S.C. § 2071(a)(1) and 15 U.S.C. § 2068(a)(1).

### FOURTH CLAIM FOR RELIEF: DEFENDANTS FAILED TO MAINTAIN RECORDS OF PROTOTYPE TESTS

85. Plaintiff repeats each and every allegation contained in numbered paragraphs 1-68 of this Complaint as if fully set forth herein.

86. Under the CPSA, FFA and regulations issued thereunder, manufacturers must maintain records of prototype tests. *See* 16 C.F.R. § 1633.11(a).

12

87. During an inspection of Defendants' facility on July 23, 2008, Chavez informed Commission investigators that Defendants had not conducted prototype tests and, thus, did not have any prototype test records.

88. Defendants failed to maintain records of prototype tests in violation of 16 C.F.R. § 1633.11(a) as identified and set forth above in paragraph 29.

89. Defendants continue to manufacture, sell, offer for sale, and otherwise introduce into commerce mattresses from lines for which no records of prototype tests are maintained, in violation of the FFA and the CPSA as identified and set forth above in paragraph 29. *See* 15 U.S.C. §§ 1192 and 2068(a)(1). Upon information and belief, these violations are ongoing.

90. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 15 U.S.C. § 2071(a)(1) and 15 U.S.C. § 2068(a)(1).

### FIFTH CLAIM FOR RELIEF: DEFENDANTS FAILED TO MAINTAIN QUALITY ASSURANCE RECORDS

91. Plaintiff repeats each and every allegation contained in numbered paragraphs 1-68 of this Complaint as if fully set forth herein.

92. Under the CPSA, FFA and regulations issued thereunder, manufacturers are required to maintain quality assurance records that demonstrate the manufacturer's written quality assurance procedures, production tests performed, production lot information, including the start and end dates of each production lot, as well as the number of sets of each production lot, mattress components, and assembly records. *See* 16 C.F.R § 1633.11(d).

93. Defendants failed to maintain quality assurance records in violation of 16 C.F.R. § 1633.11(d) as identified and set forth above in paragraphs 37, 61, and 67.

94. Defendants continue to manufacture, sell, offer for sale, and otherwise introduce

into commerce mattresses lacking quality assurance records, in violation of the FFA and the CPSA as identified and set forth above in paragraphs 37, 61, and 67. *See* 15 U.S.C. §§ 1192 and 2068(a)(1). Upon information and belief, these violations are ongoing.

95. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 15 U.S.C. § 2071(a)(1) and 15 U.S.C. § 2068(a)(1).

### SIXTH CLAIM FOR RELIEF: DEFENDANTS FAILED TO INCLUDE LABELS WITH THEIR MATTRESSES

96. Plaintiff repeats each and every allegation contained in numbered paragraphs 1-68 of this Complaint as if fully set forth herein.

97. Under the CPSA, FFA and regulations issued thereunder, mattresses must have a permanent, conspicuous, and legible label affixed that includes the name of the manufacturer, the complete physical address of the manufacturer, month and year of manufacture, model identification, prototype identification number for the mattress set, certification that the mattress complies with applicable standards, and a statement identifying whether the manufacturer intends the mattress to be sold alone or with a foundation. *See* 16 C.F.R. § 1633.12.

98. During an inspection of Defendants' facility on July 23, 2008, a sample of the Defendants' brand new Model 700 mattresses and a sample of the Defendants' renovated Model 700 mattresses were randomly selected and examined.

99. The examination showed that the Defendants failed to affix the required label to mattresses manufactured and renovated by them, as required by 16 C.F.R. § 1633.12, and as identified and set forth above in paragraph 35.

100. The mattresses collected on December 23, 2008, at Defendants' retail stores in

Rhode Island and Massachusetts, lacked proper labels required by 16 C.F.R. § 1633.12 as identified and set forth above in paragraphs 55 and 60.

101. The sample mattresses collected on February 19, 2010, at Defendants' retail stores in New Jersey, lacked the appropriate labels in violation of 16 C.F.R. § 1633.12 as identified and set forth above in paragraph 66.

102. Defendants continue to manufacture, sell, offer for sale, and otherwise introduce into commerce mattresses lacking the required labels, in violation of the FFA and the CPSA, 15 U.S.C. §§ 1192 and 2068(a)(1), as identified and set forth above in paragraphs 35, 55, 60, and 66. Upon information and belief, these violations are ongoing.

103. As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 15 U.S.C. § 2071(a)(1) and 15 U.S.C. § 2068(a)(1).

104. Based on Defendants' course of conduct, there is a substantial likelihood that, unless restrained by Order of this Court pursuant to 15 U.S.C. § 2071(a)(1), Defendants will continue to sell, offer for sale, distribute in commerce, and manufacture mattresses that fail to comply with the FFA and its associated regulations in violation of the FFA and CPSA.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests:

I. Entry of a preliminary and permanent injunction, pursuant to 15 U.S.C. § 2071(a)(1), enjoining Defendants, and each and all of their directors, officers, agents, employees, successors, assigns, and all persons or entities in active concert or participation with any of them, from directly or indirectly selling, offering for sale, distributing in commerce, manufacturing or renovating mattresses which do not comply with the FFA, CPSA, and the regulations issued

thereunder in violation of 15 U.S.C. § 1192 and 15 U.S.C. § 2068(a)(1);

II. Authorize the Commission, pursuant to this injunction, to inspect Defendants' places of business and all records relating to the manufacture, labeling, holding, and distribution of any mattress to ensure compliance with the terms of the injunction, with the costs of such inspections borne by Defendants at the rates prevailing at the time the inspections are conducted; and

III. Grant the United States judgment for its costs and such other and further relief as it deems necessary and proper.

Dated: Brooklyn, New York
June 29, 2010

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
Attorney for Plaintiff
271 Cadman Plaza East, 7th Fl.
Brooklyn, New York 11201

By: _____
JAMES CHO
Assistant United States Attorney
(718) 254-6519
James.Cho@usdoj.gov

ROGER J. GURAL
Trial Attorney, Office of Consumer Litigation
U.S. Department of Justice
450 Fifth Street, N.W.
Washington, D.C. 20001
(202) 616-0219

16

OF COUNSEL

DENNIS C. KACOYANIS
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, Maryland 20814
(301) 504-7587