```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
                    Plaintiff,               :
                                             :
        -against-                            :   No. CV-10-2980 (RRM)(CLP)
                                             :
BROOKLYN SLEEP PRODUCTS, INC.,               :
and FRANCISCO CHAVEZ,                        :
                                             :
                    Defendants.              :
------------------------------------------------------------------X
```

**DECLARATION OF HEATHER SONABEND**

HEATHER SONABEND, declares pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I have been employed as a Compliance Officer with the United States Consumer Product Safety Commission ("Commission" or "CPSC") since November 2006.

2. The Commission is an independent regulatory agency responsible for enforcing the Consumer Product Safety Act ("CPSA"), 15 U.S.C. § 2051 *et seq*. and the Flammable Fabrics Act ("FFA"), 15 U.S.C. § 1191 *et seq*. The CPSA, *inter alia*, charges the Commission with the responsibility for protecting the public against unreasonable risks of injury associated with consumer products, Section 2(b)(1) of the CPSA, 15 U.S.C. § 2051(b)(1), and makes it unlawful for any person under Section 19(a)(1) of the CPSA, 15 U.S.C. § 2068(a)(1), to sell, offer for sale, manufacture for sale, distribute in commerce, or import into the United States any consumer product, or other product or substance that is regulated under any other Act, such as the FFA, that is not in conformity with any rule, regulation, standard, or ban under any such Act.

3. Under Section 3 of the FFA, 15 U.S.C. §1192, it is unlawful for any person to: (1)

manufacture for sale, sell, or offer for sale, in commerce, or import into the United States, or introduce, deliver for introduction, transport or cause to be transported, in commerce, or sell or deliver after a sale or shipment in commerce, any product, fabric, or related material which fails to conform to an applicable standard or regulation issued or amended under the FFA; and (2) manufacture for sale, sell, or offer for sale, any product made of fabric or related material which fails to conform to an applicable standard or regulation issued or amended under the FFA, and which has been shipped or received in commerce.

4. As a Compliance Officer, my duties include enforcing the Commission's Standard for the Flammability of Mattresses and Mattress Pads and the Standard for the Flammability of Mattress Sets, 16 C.F.R. Parts 1632 and 1633.

5. Mattress sets refer to either a mattress and foundation labeled by the manufacturer for sale as a set, or a mattress labeled by the manufacturer for sale without any foundation.

6. The Commission estimates that since 2000, 255 deaths in the United States have resulted from mattress fires.

**A.  Background**

7. The FFA prohibits the manufacture or the sale of mattresses that fail to comply with the federal flammability standards. *See* 15 U.S.C. § 1192(a), (b); 15 U.S.C. § 1193. Under the FFA and federal flammability standards, mattresses must pass certain criteria when undergoing flammability tests as set forth in 16 C.F.R. § 1633.3(b).

8. As part of the flammability test, the mattress is ignited and measurements are taken during the 30 minute test to determine the amount of heat generated.

9. Under the regulations, the peak heat released from the mattress, when ignited, must

not exceed 200 kilowatts ("kW") at any time during the duration of the 30 minute flammability test and the total heat released must not exceed 15 megajoules ("MJ") for the first 10 minutes of the test.  *See* 16 C.F.R. § 1633.3(b).

**B.     Defendants Brooklyn Sleep and Francisco Chavez**

10.     Brooklyn Sleep, a New York corporation, manufactures, renovates and sells mattresses and mattress sets to retailers in interstate commerce.

11.     Brooklyn Sleep's principal place of business is located at 431 Kent Avenue, Brooklyn, New York, 11211.

12.     Francisco Chavez ("Chavez") serves as president of Brooklyn Sleep.

**C.     Inspection of Defendants' Brooklyn Facility in July 2008**

13.     I am familiar with the inspections, sample collections, and other enforcement activities performed by the Commission concerning the manufacture, renovation, and sale of mattresses and mattress sets by Defendants.  I am also familiar with the Commission's business records concerning sample collections and inspections of Defendants' facility in Brooklyn, New York, and of Defendants' retail customers in New Jersey, Rhode Island, and Massachusetts, including, but not limited to, inspection reports, memoranda, sample collection reports, test reports, letters of advice, correspondence between the Commission and Defendants, and other documents made at or near the time of the event to which the records relate, written by Commission staff with knowledge of the events recorded or described, and kept in the course of the Commission's regularly-conducted investigations.  These business records, over which I have custody and control, are located at the Commission's office in Bethesda, Maryland, and, in part, form the basis of the facts set forth in this Declaration.

3

14. On July 23, 2008, CPSC Product Safety Investigators ("investigators") conducted the first establishment inspection of Defendant Brooklyn Sleep's manufacturing facility in Brooklyn. A true and correct copy of the inspection report is attached as Exhibit 1.

15. During the July 2008 inspection, Chavez informed investigators that he was not familiar with the federal flammability standards, nor was he aware of the mattress testing requirements. A true and correct copy of Chavez's affidavit is attached as Exhibit 2.

16. Investigators instructed Chavez on the procedures for accessing the federal flammability standards and regulations and informed him of his obligation to comply with the regulations' testing, labeling, and record-keeping requirements.

17. During the inspection, Product Safety Investigators with the Commission randomly selected two mattress samples (a total of four mattresses) for flammability testing.

18. Investigators collected a sample of defendants' new Model 700 mattresses and defendants' renovated Model 700 mattresses. The mattresses selected were sealed at the facility and shipped to the Commission's testing laboratory in Maryland.

19. During the July 2008 inspection, investigators found that defendants had failed to conduct tests of any prototype mattresses and did not have records of any such test.

20. On August 14 and 15, 2008, the Commission conducted flammability tests on the four mattresses collected from defendants' Brooklyn facility.

21. All four mattresses failed the flammability tests. A true and correct copy of the test results are attached as Exhibit 3.

22. The heat released by the mattresses when ignited far exceeded the 200 kW maximum threshold for the 30 minute test. The peak heat release tests results were 456.4 kW at 5

minutes, 293.8 kW at 5 minutes, 1778.5 kW at 4 minutes, and 1034.3 kW at 3 minutes. The total heat release test results also far exceeded the 15 MJ threshold. The results were 46.69, 42.7, 55.24, and 39.3 MJ. *See* Ex. 3.

23. The mattresses also did not have the required federal label.

24. In light of these violations, on September 12, 2008, the Commission sent defendants a letter of advice ("LOA") requesting that they stop the sale of mattresses and that they take immediate corrective action. A true and correct copy of the LOA is attached as Exhibit 4**.**

25. The LOA informed defendants that they were not in compliance with the flammability standards, and the testing, recordkeeping, labeling, and quality assurance requirements set forth in 16 C.F.R. §§ 1632, 1633. *See* Ex. 4.

26. The Commission requested that defendants refrain from selling and distributing their mattresses until they complied with the regulations and requested that defendants respond to the LOA in writing.

27. Defendants did not respond to the September 2008 LOA.

**D. Commission Conducts A Second Inspection of Defendants' Facility in December 2008**

28. Because defendants failed to respond to the Commission's September 2008 LOA, and after numerous attempts to contact Chavez, I, along with several other Commission staff, contacted Chavez on December 4, 2008.

29. During the telephone call, Chavez admitted receiving the September 2008 LOA and acknowledged that he was aware of the federal flammability standards.

30. Chavez further admitted that he had continued selling mattresses after the last inspection and after the Commission's request that they stop selling mattresses. A true and

correct copy of Chavez's affidavit is attached as Exhibit 5.

      31.     I requested that Chavez send the Commission a list of his customers.

      32.     Investigators conducted a follow-up inspection of defendants' facility on December 5, 2008 to obtain a list of defendants' inventory of mattresses, a complete list of customers, and invoices from July 24, 2008 through December 5, 2008. A true and correct copy of the inspection report is attached as Exhibit 6.

      33.     During the December 2008 inspection, Chavez admitted receiving the September 2008 LOA, being advised by investigators of the applicable flammability standards, and that he continued to sell mattresses after the first inspection in July 2008.

      34.     The Commission sent defendants a second LOA on or about January 30, 2009 reminding them that their conduct violated the flammability standards and regulations, and ordered defendants to take steps to ensure compliance. A true and correct copy of the LOA dated January 30, 2009 is attached as Exhibit 7.

      35.     On or about March 4, 2009, the Commission received a letter from defendants stating that they were in compliance with federal flammability laws and that they had stopped selling defective mattresses. Defendants, however, provided no documentation to support their position that they were in compliance with the federal flammability standards. A true and correct copy of the letter received from defendants is attached as Exhibit 8.

      36.     In response to defendants' letter, on or about April 30, 2009, the Commission issued a "Subpoena and Special Order" to defendants as part of its investigation and to confirm that defendants were complying with the federal flammability standards and regulations. A true and correct copy of the subpoena is attached as Exhibit 9.

37. The Commission requested that defendants respond to a series of questions and produce documents relating, *inter alia*, to all testing, prototypes, and quality assurance records relating to their mattresses. *See* Ex. 9.

38. The Commission sought the information to determine whether defendants had taken steps to comply with the FFA and the flammability regulations.

39. On or about May 13, 2009, defendants sent to the Commission test results from "The Govmark Organization, Inc.," dated March 21, 2009, that purport to depict the results of flammability tests of two of defendants' prototype models. A true and correct copy of the documents received from defendants is attached as Exhibit 10.

40. The Govmark reports show that two prototypes were tested (*i.e.*, three mattresses per prototype for a total of six mattresses). *See* Ex. 10.

41. One style of defendants' mattresses passed the flammability tests, while the other model failed. *See* Ex. 10.

42. The Model 950 prototype exceeded the performance requirement with a peak heat release of 203 kW; the regulations require a peak heat release of no more than 200 kW. *See* Ex. 10.

43. Because one of the three specimens failed to meet the minimum flammability standards, the prototypes did not meet the flammability standards.

44. Under the regulations, all three prototype samples must meet the flammability standards. *See* 16 C.F.R. § 1633.4(a).

45. The Commission considered the materials produced by defendants inadequate. Defendants failed to respond to questions 1-30 in Section III of the subpoena and failed to

adequately respond to request for documents numbers 1-13 in Section IV of the subpoena. Defendants failed to verify their responses and had failed to respond to the Commission's written questions.

46. The Commission advised defendants of their deficient subpoena responses in a letter dated August 27, 2009. A true and correct copy of the Commission's letter to defendants, dated August 27, 2009, is attached as Exhibit 11.

47. Defendants never responded to the Commission's August 2009 letter.

### E.    Inspections of Retailers Selling Defendants' Mattresses

#### (1)    Inspection of Defendants' Mattresses from A Retail Store In Providence, Rhode Island In December 2008

48. On December 23, 2008, Commission investigators collected at random two mattresses manufactured by defendants from a retail store located in Providence, Rhode Island. A true and correct copy of the inspection report is attached as Exhibit 12.

49. The Commission conducted flammability tests on March 5, 2009. Both mattresses exceeded the 200 kW heat release threshold with test results of 205.2 kW at 30 minutes and 917.62 kW at 2 minutes. A true and correct copy of the test results is attached as Exhibit 13.

50. One of the mattresses also exceeded the total heat release threshold of 15 MJ with a test result of 33 MJ. *See* Ex. 13.

51. In addition, defendants failed to affix the appropriate label to the mattresses as required under 16 C.F.R. § 1633.12. *See* Ex. 13.

52. One of the mattresses had a blank label that failed to include the date of manufacture, model number, and prototype identification number, as required under § 1633.12. *See* Exs. 12, 13. The other was missing a federal label entirely. *See* Exs. 12, 13.

53. Investigators further found that 15 of the defendants' mattresses at the retail store had either no federal label or an incomplete label. *See* Ex. 12.

### (2) Inspection of Defendants' Mattresses From A Retail Store In Fall River, Massachusetts In December 2008

54. On December 23, 2008, Commission investigators collected at random two mattresses manufactured by defendants from a retail store located in Fall River, Massachusetts. A true and correct copy of the inspection report is attached as Exhibit 14.

55. Both mattresses failed flammability tests conducted on March 5, 2009. A true and correct copy of the test results is attached as Exhibit 15.

56. Specifically, both mattresses exceeded the 200 kW peak heat release threshold with test results of 479.42 kW at 3 minutes and 570.26 kW at 3 minutes. *See* Ex. 15.

57. Both mattresses exceeded the total heat release threshold of 15 MJ with test results of 27.26 MJ and 27.57 MJ. *See* Ex. 15.

58. Furthermore, defendants failed to affix the requisite federal label to either mattress.

59. The Commission sent defendants a third LOA on or about November 16, 2009, advising defendants of the violations from the mattresses obtained from defendants' retail customers and ordered defendants to take corrective action. A true and correct copy of the LOA, dated November 16, 2009, is attached as Exhibit 16.

60. Defendants failed to respond to the Commission's third LOA.

### (3) Inspection of Defendants' Mattresses From New Jersey Retail Stores in February 2010

61. To determine whether defendants continued to violate the federal flammability standards and regulations, on February 19, 2010, a Commission investigator collected mattress

samples from three of defendants' retail customers in New Jersey.  A true and correct copy of the inspection report is attached as Exhibit 17.

62.     On February 25, 2010, the Commission conducted flammability tests on the samples collected and one of defendants' mattresses failed to meet the minimum federal flammability standards.  A true and correct copy of the test results is attached as Exhibit 18.

63.     The mattress that failed had a peak heat release reading of 287.11 kW and a total heat release reading of 79.56 MJ.  *See* Ex. 18.

64.     In addition, this mattress lacked the required federal label.  The label affixed to the other mattress and those collected from other retail stores in New Jersey on February 19, 2010 stated that they were intended to be used with or without a foundation.

65.     The labels, however, failed to include the appropriate foundation identification information.

66.     As a result of these violations, on or about March 24, 2010, the Commission sent defendants a fourth LOA advising them of the ongoing violations and ordering defendants to take the following corrective measures:   (1) stop the sale of their mattresses; (2) correct mattress set labels; (3) conduct required prototype testing; and (4) maintain applicable records.  A true and correct copy of the LOA is attached as Exhibit 19.

67.     Defendants never responded to the fourth LOA.

I declare that the foregoing is true and accurate to the best of my knowledge, information and belief.

Dated: Bethesda, Maryland
      June 24, 2010

By: _____
Heather E. Sonabend