UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,                          :
                                                                              :        Civil Action No.
                                    Plaintiff,                       :        CV-10-2980 (RRM)(CLP)
                                                                              :
                       -against-                                   :
                                                                              :
BROOKLYN SLEEP PRODUCTS, INC.,           :
and FRANCISCO CHAVEZ,                             :
                                                                              :
                                    Defendants.                  :
------------------------------------------------------------------------X


**PLAINTIFF UNITED STATES' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**


                                                             LORETTA E. LYNCH
                                                             United States Attorney
                                                             Eastern District of New York
                                                             Attorney for Plaintiff
                                                             271 Cadman Plaza East, 7th Fl.
                                                             Brooklyn, New York 11201


                                                             James R. Cho
                                                             Assistant United States Attorney

                                                             Roger J. Gural
                                                             Trial Attorney
                                                             U.S. Department of Justice

OF COUNSEL
Dennis C. Kacoyanis
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission

August 5, 2010

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

      A.      The CPSA And FFA Are Public Health Statutes
            That Specifically Authorize District Courts To Restrain
            Violations Of The CPSA ................................................................................... 2

      B.      Courts Exercise Broad Injunctive Powers Under The CPSA
            And Other Public Health Statutes To Protect The Public .................................. 5

            1.      The Federal Hazardous Substances Act ...................................................... 5

            2.      The Food, Drug, and Cosmetic Act ........................................................... 7

      C.      The Specific Injunctive Relief Sought Here Is Permissible
            And Appropriate In Light Of Defendants' Ongoing Violations Of
            The CPSA And FFA ........................................................................................ 8

CONCLUSION ................................................................................................................... 13

## TABLE OF AUTHORITIES

## CASES

*FTC v. Verity International, Ltd.*, 443 F.3d 48 (2d Cir. 2006) ........................................................ 4

*Mitchell v. DeMario Jewelry*, 361 U.S. 288 (1960) ........................................................................ 4

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ...................................................................... 4

*Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1982) ................................................ 4

*United States v. An Article of Drug . . . Bacto-Unidisk*, 394 U.S. 784 (1969) ........................... 4, 7

*United States v. Beck*, No. 05-CV-2372 (E.D. Mo. Dec. 21, 2005) ......................................... 5, 12

*United States v. Bethlehem Steel Corp.*,
312 F. Supp. 977 (W.D.N.Y. 1970) .................................................................................................. 4

*United States v. Daiso Holding USA, Inc.*,
No. 10-CV-795 (N.D. Cal. Mar. 4, 2010) ............................................................................... passim

*United States v. Diapulse Corp. of America*, 457 F.2d 25 (2d Cir. 1972) ..................................... 7

*United States v. Ellis & Pyroworks, LLC*,
No. 06-CV-127 (E.D. Mo. June 1, 2006) ................................................................................. 5, 12

*United States v. Endotec, Inc.*,
No. 6:06-cv-1281, 2009 WL 3111815 (M.D. Fla. Sept. 28, 2009) ..................................... passim

*United States v. Gossett & Pyro Aluminum Co.*,
No. 06-CV-6074 (D. Or. Sept. 8, 2006) .................................................................................. 5, 12

*United States v. Lane Laboratories-USA, Inc.*,
324 F. Supp. 2d 582 (D.N.J. 2004) ....................................................................................... passim

*United States v. Livdahl*, 356 F. Supp. 2d 1289 (S.D. Fla. 2005) ........................................ passim

*United States v. Midwest Fireworks Manufacturing Co.*, Temporary Restraining Order,
No. 99-CV-2240 (N.D. Ohio Sept. 30, 1999) .................................................................................. 6

*United States v. Midwest Fireworks Manufacturing Co.*, Order of Injunction,
No. 99-CV-2240 (N.D. Ohio Nov. 3, 1999) ............................................................................... 6, 7

*United States v. Midwest Fireworks Manufacturing Co.*, Order of Permanent Injunction,
No. 99-CV-2240 (N.D. Ohio Jan. 28, 2000) .................................................................. 7

*United States v. Purrington et al.*, 523 F. Supp. 2d 1196 (D. Idaho 2007) ................................... 6

*United States v. Rasmus & Pyrotek*,
No. 04-CV-2570 (M.D. Pa. Nov. 29, 2004) ................................................................ 5, 12

*United States v. Richlyn Laboratories, Inc.*, 822 F. Supp. 268 (E.D. Pa. 1993) ...................... 8, 13

*United States v. RX Depot, Inc.*, 290 F. Supp. 2d 1238 (N.D. Okla. 2003) ................................... 8

*United States v. Shelton Wholesale, Inc.*,
34 F. Supp. 2d 1147 (W.D. Mo. 1999), *aff'd* 277 F.3d 998 (8th Cir. 2002) ............................ 5, 6

*United States v. Syntrax Innovations, Inc.*,
149 F. Supp. 2d 880 (E.D. Mo. 2001) ................................................................. *passim*

*United States v. Union Cheese Co.*, 902 F. Supp. 778 (N.D. Ohio 1995) ......................... 8, 11, 12

*United States v. Universal Management Services, Inc.*,
999 F. Supp. 974 (N.D. Ohio 1997) ................................................................. 4, 8, 10

*United States v. Vita-Erb, Ltd.*,
No. 05-3494-cv, 2006 WL 3313941 (W.D. Mo. Nov. 14, 2006) ....................................... *passim*

*United States v. Vital Health Products*, 786 F. Supp. 761 (E.D. Wis. 1992) ............................... 8

*United States CFTC v. Rolando*, 589 F. Supp. 2d 159 (D. Conn. 2008) ...................................... 4

### STATUTES

Flammable Fabrics Act ("FFA"), 15 U.S.C. §§ 1191-1204 ......................................................... 1

15 U.S.C. § 1192(a) .................................................................................................. 3

15 U.S.C. § 1193(a) .................................................................................................. 3

15 U.S.C. § 1194(e) ................................................................................................. 13

15 U.S.C. § 1261 *et seq.* ............................................................................................ 5

15 U.S.C. § 1263 ....................................................................................................... 5

15 U.S.C. § 1267 ....................................................................................................... 5

Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051-2084 .......................................... 1, 4

15 U.S.C. § 2051(b)(1) ............................................................................................................... 2

15 U.S.C. § 2065 .................................................................................................................... 9, 10

15 U.S.C. § 2068 ..................................................................................................................... 3, 4

15 U.S.C. § 2069 ........................................................................................................................ 13

15 U.S.C. § 2071 ..................................................................................................................... 3, 4

15 U.S.C. § 2079 .......................................................................................................................... 3

21 U.S.C. § 331 ............................................................................................................................ 7

21 U.S.C. § 332 ............................................................................................................................ 7

Section 216 of the Consumer Product Safety Improvement Act of 2008,
Pub. L. No. 110-314, 122 Stat. 3016 ........................................................................................... 3

## RULES

Fed. R. Civ. P. 65 ............................................................................................................... 5, 8, 9

## PRELIMINARY STATEMENT

On June 30, 2010, the United States filed an application for preliminary and permanent injunctive relief seeking to enjoin Defendants, Brooklyn Sleep Products, Inc. ("Brooklyn Sleep"), and its president, Francisco Chavez ("Chavez") (collectively, the "defendants"), from violating the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051-2084, and the Flammable Fabrics Act ("FFA"), 15 U.S.C. §§ 1191-1204.  An extensive two-year investigation conducted by the United States Consumer Product Safety Commission ("Commission" or "CPSC") found that defendants, *inter alia*, had manufactured mattresses that failed to meet minimum flammability standards and violated the safety provisions under the CPSA and FFA.

The United States filed with its application a "Proposed Order of Preliminary Injunction." On July 1, 2010, Your Honor ordered the United States to file a Supplemental Memorandum of Law providing legal support for the scope of the proposed order for preliminary injunctive relief. In response to Your Honor's Order, the United States respectfully submits this Supplemental Memorandum and Revised Proposed Order of Preliminary Injunction ("Revised Order").[1]

The Revised Order consists of seven main provisions:  Section I enjoins defendants from, *inter alia*, manufacturing and selling mattresses that fail to comply with the standards set forth in the CPSA, FFA and applicable regulations.  *See* Revised Order at § I.  Section II requires defendants to provide notice of the Order to the relevant parties, including their employees.  *See* Revised Order at § II.  Section III provides for inspections of defendants' facility to ensure compliance with the Revised Order, the CSPA and FFA.  *See* Revised Order at § III.  Section IV requires defendants to comply with requests for information.  *See* Revised Order at § IV.  Section V sets forth remedies in the event defendants fail to comply with the Revised Order and continue

---

[1]  The Revised Order is designed to remedy the defendants' history of violations and address the public health and safety issues presented by such violations without unduly burdening defendants.

to violate the FFA and CPSA. *See* Revised Order at § V. The remedies include ordering defendants to stop selling defective mattresses, recall their defective mattresses, provide samples for further testing, and take any other corrective action necessary to protect the public safety and to ensure compliance with the FFA and CPSA. The defendants would be required to bear the cost of any recalls and corrective actions ordered by the Court. Section VI instructs defendants to direct any communications to the Commission in Bethesda, Maryland. *See* Revised Order at § VI. Finally, Section VII states that the United States may seek civil penalties against defendants for violations of the CPSA and FFA as provided in the CPSA. *See* Revised Order at § VII.

For the reasons discussed, below, the United States respectfully requests that the Court enter the Revised Order, after affording defendants an opportunity to be heard, because the relief requested is supported by applicable federal statutes and regulations, relevant case law, and is appropriate because it is narrowly-tailored to address the specific violative conduct at issue in this case.

## ARGUMENT

### A.   The CPSA And FFA Are Public Health Statutes That Specifically Authorize District Courts To Restrain Violations Of The CPSA

The CPSA is designed "to protect the public against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051(b)(1). The CPSA makes it unlawful for any person to sell, offer for sale, manufacture for sale, or distribute in commerce any consumer product, or other product or substance that is regulated under the CPSA or any other act enforced by the Commission, including the FFA,[2] that is not in conformity with an applicable consumer

---

[2] The Commission enforces the FFA, among other public health statutes. *See* 15 U.S.C. § 2079(b).

2

product safety rule under the CPSA, or any similar rule, regulation, or standard.  *See* 15 U.S.C. § 2068(a)(1) (prohibited acts).

The FFA, which regulates fabrics and materials made of fabrics, including mattresses, was enacted to "protect the public against unreasonable risk of the occurrence of [mattress] fire[s] leading to death or personal injury."  *See* 15 U.S.C. § 1193(a).  The FFA prohibits the manufacture for sale, sale, or the offering for sale, of any product, fabric, or related material which fails to conform to an applicable standard or regulation issued under the FFA.  *See* 15 U.S.C. § 1192(a).  Pursuant to 15 U.S.C. § 1193(a), the Commission promulgated regulations that set forth flammability standards with respect to mattresses, mattress pads, and mattress sets.  *See* 16 C.F.R. Parts 1632 and 1633 (the "Flammability Standards").

To ensure compliance with the CPSA and FFA, the CPSA specifically authorizes United States District Courts to restrain any violation of section 2068 (prohibited acts) of the CPSA, which includes violations of the FFA, and "restrain any person from distributing in commerce a product which does not comply with a consumer product safety rule.[3]  *See* 15 U.S.C. § 2071(a); *see also* 15 U.S.C. § 2068(a)(1) (unlawful for any person to sell any consumer product regulated under any other act enforced by the Commission).

---

[3]  The Consumer Product Safety Improvement Act ("CPSIA") specifically amended the acts prohibited under the CPSA to allow for more uniform enforcement of the statutes the Commission administers -- including the FFA and the Federal Hazardous Substances Act ("FHSA") -- under the provisions of the CPSA.  The acts prohibited under the CPSA now include violations of any other similar rule, regulation, or standard under any other Act enforced by the Commission.  *See* 15 U.S.C. §§ 2068(a)(1), (2).  This amendment to the CPSA's prohibited acts allows courts to enjoin more than just violations of "consumer product safety standards" under the CPSA, but also permits the Commission to enforce violations of any other regulations and standards under other acts enforced by the Commission under the CPSA.  *See* Section 216 of the Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016.

The CPSA and the FFA set forth affirmative measures in furtherance of Congress's goal of protecting the public health by preventing dangerous consumer products and flammable fabrics from entering the chain of commerce. As evidenced by 15 U.S.C. § 2071 -- which empowers district courts to grant injunctions when violations of the acts prohibited in the CPSA have occurred -- Congress set forth equitable measures to rectify activity that would otherwise frustrate Congress's goal of safeguarding the public. *See* 15 U.S.C. §§ 2068, 2071(a).[4] The specific relief sought by the United States in its Revised Order is not only within the Court's power, but is also appropriate.

---

[4] A court's equitable powers are broad and extensive. The Second Circuit has held that "when the jurisdiction of a court of equity has been invoked, the court may, unless there is a clear statutory restriction, exercise its equity powers to the fullest." *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 n.11 (2d Cir. 1982) (citing *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 291-92 (1960) (finding the court had jurisdiction to order an employer to reimburse employees for lost wages in a suit by the Secretary of Labor to restrain violations of the Fair Labor Standards Act)); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.")). The CPSA does not place any limitations on the type of equitable relief the court may order to restrain public safety violations. *See* 15 U.S.C. §§ 2051-2084. Furthermore, when defendants' actions violate public safety statutes, courts exercise their broad equitable authority given the "overriding purpose to protect the public health." *United States v. Universal Mgmt. Servs., Inc.*, 999 F. Supp. 974, 981 (N.D. Ohio 1997) (citing *United States v. An Article of Drug . . . Bacto-Unidisk*, 394 U.S. 784, 798 (1969)). The Second Circuit also recognizes the broad equitable powers granted to district courts to fashion appropriate injunctive relief in other enforcement matters brought by federal agencies. *See FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 66 (2d Cir. 2006) (noting that although the Federal Trade Commission Act ("FTCA") allows for permanent injunctions but does not expressly provide for restitution, various circuit courts have concluded that the FTCA allows "restitution or other ancillary equitable relief"); *see also United States CFTC v. Rolando*, 589 F. Supp. 2d 159, 172 (D. Conn. 2008) (stating that the court "is satisfied that it has complete authority to issue ancillary equitable relief, including, but not limited to, ordering [defendant] to make restitution for his violations of the [Commodity Exchange] Act" which provides for injunctions but does not specifically mention restitution); *United States v. Bethlehem Steel Corp.*, 312 F. Supp. 977, 993 (W.D.N.Y. 1970) ("In formulating relief from such practices the courts are not limited to simply parroting [an] Act's prohibitions but are permitted, if not required to 'order such affirmative action as may be appropriate.'") (internal citations omitted).

### B. Courts Exercise Broad Injunctive Powers Under The CPSA And Other Public Health Statutes To Protect The Public

District Courts routinely exercise their broad injunctive powers to restrain violations of the CPSA and other public health statutes.

#### 1. The Federal Hazardous Substances Act

Courts routinely issue broad injunctive relief to restrain violations of the Federal Hazardous Substances Act. The FHSA, like the CPSA and FFA, is one of the public health statutes enforced by the Commission. *See* 15 U.S.C. § 1261 *et seq*. The FHSA prohibits the delivery or introduction into the chain of commerce of numerous banned and misbranded hazardous substances. *See* 15 U.S.C. § 1263. The FHSA, like section 2071(a) of the CPSA, confers jurisdiction on United States District Courts "for cause shown and subject to [Fed. R. Civ. P. 65], to restrain violations of [the FHSA]." *See* 15 U.S.C. § 1267.

Courts have routinely ordered injunctive relief to address violations of the FHSA. *See United States v. Shelton Wholesale, Inc.,* 34 F. Supp. 2d 1147, 1166-67 (W.D. Mo. 1999), *aff'd* 277 F.3d 998 (8th Cir. 2002). Under the FHSA, courts have ordered injunctive relief banning individuals and firms from operating in the fireworks industry. *See United States v. Gossett & Pyro Aluminum Co.*, No. 06-CV-6074 (D. Or. Sept. 8, 2006) (docket no. 20) (¶ VI) (enjoining defendants permanently from participating in any transactions involving fireworks components: oxiders, fuel, fuses, tubes, or end caps); *United States v. Ellis & Pyroworks, LLC*, No. 06-CV-127 (E.D. Mo. June 1, 2006) (docket no. 11) (¶ IV) (same); *United States v. Beck*, No. 05-CV-

5

2372 (E.D. Mo. Dec. 21, 2005) (docket no. 2) (¶ IV) (same); *United States v. Rasmus & Pyrotek*, No. 04-CV-2570 (M.D. Pa. Nov. 29, 2004) (docket no. 2) (¶ IV) (same).[5]

Short of imposing a total ban on a defendant's participation in the fireworks industry under the FHSA, courts have also entered injunctive relief setting forth the exact conditions under which a defendant may continue to operate. *See United States v. Purrington*, 523 F. Supp. 2d 1196, 1197-99 (D. Idaho 2007) (fashioning injunctive relief with detailed conditions on defendants' prospective distribution of chemicals and components, transport of hazardous materials, and record keeping and compliance); *Shelton Wholesale,* 34 F. Supp. 2d. at 1167 (enjoining defendants from knowingly or recklessly importing fireworks devices violative of any and all CPSC regulations).

In addition to ordering permanent relief, courts also have entered temporary and preliminary orders of injunction under the FHSA. After an initial hearing in *United States v. Midwest Fireworks Manufacturing Co.*, the court entered a temporary restraining order directing defendants to: (1) stop distributing their violative products; (2) allow the CPSC to conduct further sampling and to inspect facilities and records; and (3) provide CPSC with an inventory of products. *See* Temporary Restraining Order at ¶¶ III, IV, *Midwest Fireworks*, No. 99-CV-2240 (N.D. Ohio Sept. 30, 1999) (docket no. 12). After a second hearing, the *Midwest Fireworks* court granted the government's motion for preliminary relief barring defendants from distributing certain types of products and granting CPSC additional inspection rights. *See* Order

---

[5] The unpublished cases cited herein are contained in the "Appendix of Unpublished Cases Cited In Support Of The Plaintiff United States' Supplemental Memorandum Of Law In Support Of Its Motion For Preliminary Injunctive Relief."

of Injunction at ¶¶ III, IV, *Midwest Fireworks*, No. 99-CV-2240 (N.D. Ohio Nov. 3, 1999) (docket no. 21).[6]

### 2. The Food, Drug, and Cosmetic Act

Courts have ordered broad injunctive relief under the federal Food, Drug, and Cosmetic Act ("FDCA") -- another public health statute. The FDCA was enacted to protect the public against misbranded and adulterated food. *See* 21 U.S.C. § 331; *see also United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Cir. 1972) ("The passage of the [FDCA] is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained."). Similar to the CPSA and FHSA, the FDCA specifically authorizes courts to restrain violations of the FDCA. *See* 21 U.S.C. § 332 (conferring jurisdiction on courts to restrain violations of 21 U.S.C. § 331). When faced with violations of the FDCA, courts have issued broad injunctive orders to protect the public health. *See Bacto-Unidisk*, 394 U.S. at 798 (holding that the FDCA's injunctive power, 21 U.S.C. § 332(a), should be exercised broadly in light of its public health purpose); *see, e.g.*, *Diapulse*, 457 F.2d at 29 (finding that a "company's persistence in marketing the [violative product] makes it highly likely that the prohibited activity will cease only on the issuance of [injunctive relief]").

Much like the outright bans imposed upon fireworks producers under the FHSA, injunctions issued under the FDCA routinely permit the federal Food and Drug Administration ("FDA") to require defendants to immediately cease their operations, initiate recalls, or take other corrective actions. This authority gives the FDA, which enforces the FDCA, the means to

---

[6] After a final hearing, the *Midwest Fireworks* court entered a permanent injunction barring defendants from distributing violative devices, requiring them to inventory and destroy violative products, and granting CPSC additional inspection rights. *See* Amended Order of Permanent Injunction at ¶¶ III, VI, VII, *Midwest Fireworks*, No. 99-CV-2240 (N.D. Ohio Jan. 28, 2000) (docket no. 34).

take swift and appropriate action to safeguard the public health by preventing misbranded food and unapproved new drugs from reaching consumers. Such "relief is routinely ordered by other courts to ensure compliance with the terms of the injunction." *United States v. Syntrax Innovations, Inc.*, 149 F. Supp. 2d 880, 884-89 (E.D. Mo. 2001) (finding "it necessary to permit the government to shut down the defendants' operations upon a finding of a violation of this Order without further action by this Court"). This relief has been granted in many FDCA enforcement cases.[7]

    **C.    The Specific Injunctive Relief Sought Here Is Permissible And Appropriate In Light Of Defendants' Ongoing Violations Of The CPSA And FFA**

As discussed above, courts are accorded wide latitude in fashioning relief to address violations of federal public health statutes. The relief sought at this stage of the case, however, does not seek to leverage the full panoply of permissible remedies, but to gain assurance that defendants will comply with their statutory and regulatory obligations. Rather than seeking to ban defendants from operating in the highly-regulated mattress industry, the United States is requesting measures designed to bring the defendants into compliance with the Flammability Standards. The terms of the Revised Order are appropriate because they describe with specificity and particularity the type of conduct sought to be restrained and do not simply require defendants to "follow the law." *See* Fed. R. Civ. P. 65; *Syntrax*, 149 F. Supp. 2d at 884. The

---

[7] *See, e.g.*, *United States v. Endotec, Inc.*, No. 6:06-cv-1281, 2009 WL 3111815, at *9 (M.D. Fla. Sept. 28, 2009); *United States v. Vita-Erb, Ltd.*, No. 05-3494-cv, 2006 WL 3313941, at *8-*9 (W.D. Mo. Nov. 14, 2006); *United States v. Livdahl*, 356 F. Supp. 2d 1289, 1294-95 (S.D. Fla. 2005); *United States v. Lane Labs-USA, Inc.*, 324 F. Supp. 2d 582, 584-85 (D.N.J. 2004); *United States v. RX Depot, Inc.*, 290 F. Supp. 2d 1238, 1251 (N.D. Okla. 2003); *Syntrax*, 149 F. Supp. 2d at 885; *Universal Mgmt. Servs.*, 999 F. Supp. at 983-84; *United States v. Union Cheese Co.*, 902 F. Supp. 778, 788-89 (N.D. Ohio 1995); *United States v. Richlyn Labs., Inc.*, 822 F. Supp. 268, 274-75 (E.D. Pa. 1993); *United States v. Vital Health Prods.*, 786 F. Supp. 761, 779-80 (E.D. Wis. 1992).

United States offers additional support for the specific corrective measures it requests in its Revised Order, as follows:

First, section I(A)-(E) of the Revised Order outlines specific prohibitions based on evidence of violative conduct collected by the CPSC during inspections over the last two years; these prohibitions are tailored to address and remedy the specific violations of the CPSA and FFA as set forth in the Complaint.

Second, section II requires defendants to provide notice of the Order to relevant parties, including their employees, pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.

Third, section III of the Revised Order calls for inspection rights for the CPSC, separate from and in addition to the Commission's authority to conduct inspections under the CPSA. *See, e.g.,* 15 U.S.C. § 2065 (inspection and recordkeeping). Such relief is appropriate. *See Syntrax*, 149 F. Supp. 2d at 884 (holding that "[t]he inspection authority needed by FDA to ensure that defendants are complying with the terms of [the order] should be more extensive than the statutory authority granted the FDA to determine whether the [FDCA] is, in fact, being violated."); *United States v. Daiso Holding USA, Inc.*, No. 10-CV-795 (N.D. Cal. Mar. 4, 2010) (¶ 7) (page 16 of 24) (subjecting defendants to inspection by the Commission); *see also Endotec*, 2009 WL 3111815, at *10 (¶ 8) (permitting FDA, without prior notice and when the FDA deemed necessary, to inspect defendants' facilities and take any other measures necessary to monitor and ensure continuing compliance with the terms of the court's order); *Vita-Erb*, 2006 WL 3313941, at *8 (¶ 13) (same); *Livdahl*, 356 F. Supp. at 1294-95 (¶ 13) (same); *Lane Labs-USA*, 324 F. Supp. 2d at 583-84 (¶ 7) (granting additional inspection authority to the FDA and authorizing the FDA to monitor defendants' compliance "by all lawful means, including but not limited to using representatives posing as consumers to contact defendants' websites, employees,

9

and representatives.")  Without this relief, if defendants refuse an inspection, the Commission must seek an administrative inspection warrant in a separate judicial proceeding.  The Commission is seeking to include this in the Court's Order to ensure that defendants will comply with the proposed Revised Order.  As noted, above, the Commission and FDA have obtained this relief in other cases.

Fourth, section IV directs defendants to promptly provide records and information to the CPSC upon request, as required under the CPSA.[8]  *See* 15 U.S.C. § 2065(b) (recordkeeping).  Courts routinely grant this request.  S*ee Endotec*, 2009 WL 3111815, at *9 (¶ 6) (ordering defendants to establish, implement, and continuously maintain a record-keeping system to track, among other things:  (a) a component's name, catalog number, quantity, and lot number; (b) the name and address of the purchaser(s); and (c) the date of sale, and to submit a copy of the records to the FDA on a quarterly basis); *Universal Mgmt.*, 999 F. Supp. at 982-83 (¶ 4) (ordering defendants to provide records relating to manufacture and distribution); *Lane Labs-USA*, 324 F. Supp. 2d at 586 (¶ 14.C) (appointing a special master to receive records from defendants, including customer information, invoices, manufacturing costs, tax returns, and bank and accounting statements); *Daiso*, No. 10-CV-795 (¶¶ 5, 6) (page 16 of 24) (requiring defendants in *Daiso* to maintain test records and customs entry information).

Fifth, in section V of the Revised Order, the United States requests specific types of affirmative injunctive relief necessary to bring defendants into compliance in the event the CPSC determines that the defendants have violated the Revised Order or continue to violate the FFA, or the CPSA.  Specifically, section V(A) of the Revised Order allows the Commission to petition

---

[8] During the course of the Commission's investigation, in response to requests for information by the CPSC, defendants often ignored the Commission's requests for information or provided incomplete responses.

10

this Court for additional equitable relief for documented violations. Such relief could include ordering defendants to immediately take certain actions, such as halting operations until compliance is achieved. This authority is the surest and swiftest means of protecting the public in light of continuing violations after a Court Order. The Commission has obtained this kind of relief in other cases as discussed above. *See, e.g.,* cases cited at pages 5-6, above; *see also Syntrax*, 149 F. Supp. 2d 880, 884-89.

In the highly-regulated area of food and drug manufacturing, courts have required companies acting in violation of the FDCA to cease manufacturing and distributing products until the FDA agrees that the companies are in compliance. *See Syntrax*, 149 F. Supp. 2d at 885 (finding "it necessary to permit the government to shut down the defendants' operations upon a finding of a violation of this Order without further action by this Court"); *see also* footnote 7, above (listing a multitude of FDCA enforcement cases in which courts granted the FDA shutdown authority).

Section V(B) of the Revised Order requires defendants to recall defective products if they violate the Revised Order and continue to violate the CPSA and FFA. Courts have granted similar relief when products pose a risk to consumers. *See, e.g.*, *Daiso*, No. 10-CV-795 (¶ 1(I)) (page 9 of 24) (recalling to the retail level certain defective and non-complying products distributed or received in commerce). Cases involving the FDCA have contained similar provisions. *See Syntrax*, 149 F. Supp. 2d at 890-91 (¶ 21) (allowing the FDA to order defendants to recall articles if shipped in violation of the FDCA or the court's order); *Union Cheese*, 902 F. Supp. at 788 (¶ I.C) (allowing the FDA to order defendants to recall at their own expense any lot of product found to be contaminated with pathogenic bacteria or filth); *Livdahl*, 356 F. Supp. at

1294-95 (¶¶ 12, 15) (ordering defendants to immediately turn over all Botox in their possession to the FDA and institute a recall of any and all Botox they have distributed).

Section V(C) of the Revised Order authorizes the Commission to seek an order requiring defendants' mattresses to undergo flammability testing. The Court would not be ordering the defendants to anything more than the law currently requires. The regulations already require defendants to test their mattresses to ensure they comply with the federal Flammability Standards. *See, e.g.*, 16 C.F.R. §§ 1633.1, 1633.3. This provision is further necessary because defendants' mattresses in the past have failed to pass minimum Flammability Standards when tested. In other cases, courts have ordered defendants to conduct similar types of testing. *See Daiso*, No. 10-CV-795 (¶ 1(F)) (page 7 of 24) (ordering defendants to hire an independent product tester); *Union Cheese*, 902 F. Supp. at 788, 789 (¶¶ I.A.4, III) (ordering defendants to develop a comprehensive sampling and testing plan involving routine testing for pathogens on food contact surfaces, equipment, and other environmental sites throughout the facility in accordance with timetables and methods acceptable to the FDA conducted by an independent test company for one year).

Section V(D) of the Revised Order requires defendants to bear the cost of additional inspections and corrective actions in the event defendants fail to comply with the terms of the Revised Order. This type of relief is reasonable, as the United States has spent considerable time and resources documenting defendants' non-compliance with the CPSA and FFA and made numerous attempts to obtain defendants' compliance since 2008 -- all at the public's expense. Nevertheless, defendants continued to expose the public to potentially dangerous products even after the CPSC's repeated warnings that their products posed a danger to the public health.

Courts addressing violations of the FHSA have routinely ordered defendants to pay attorney's fees, investigational expenses, and court costs in the event they violate court orders and are found in civil or criminal contempt. *See, e.g.*, *Gossett*, No. 06-CV-6074 (¶ VII of Order) (page 4); *Ellis & Pyroworks*, No. 06-CV-127 (¶ X of Order); *Beck*, No. 05-CV-2372 (¶ VI of Order); *Rasmus & Pyrotek*, No. 04-CV-2570 (¶ X of Order). Further, the court in *Daiso* entered relief requiring defendants to reimburse the Commission for the cost of inspections and making them potentially liable for liquidated damages for each day defendants were not in compliance with the order. *See Daiso*, No. 10-CV-795 (¶¶ 8, 18) (pages 7 and 20 of 24). Similarly, in FDCA cases, courts have routinely required defendants to reimburse the FDA for inspection costs and liquidated damages. *See, e.g.*, *Vita-Erb*, 2006 WL 3313941, at *9 (¶¶ 14, 18); *Endotec*, 2009 WL 3111815, at *10 (¶ 11); *Richlyn Labs*, 822 F. Supp. at 275 (¶ E); *Livdahl*, 356 F. Supp. at 1295 (¶ 14); *Lane Labs-USA*, 324 F. Supp. 2d at 584 (¶ 8).[9]

Finally, section VII provides that the Revised Order does not preclude the United States from commencing a civil penalty action against the defendants for violations of the CPSA and FFA. *See* Revised Order at § VII. Section 2069 of the CPSA and section 1194(e) of the FFA provide for civil penalties for violations of the CPSA and FFA. *See* 15 U.S.C. §§ 1194, 2069.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant the requested preliminary injunctive relief, after affording defendants an opportunity to be heard. The CPSA specifically authorizes district courts to issue injunctive relief to restrain violations of the CPSA. Established precedent demonstrates that courts have exercised their broad injunctive powers when issues of public safety are implicated. The Revised Order submitted with this

---

[9] Section VI of the Revised Order provides a point of contact for defendants. *See* Revised Order at § VI.

Supplemental Memorandum is narrowly tailored and requests specific relief to address the public safety violations at issue in this case.

Dated: Brooklyn, New York
       August 5, 2010

    LORETTA E. LYNCH
    United States Attorney
    Eastern District of New York
    Attorney for Plaintiff
    271 Cadman Plaza East, 7th Fl.
    Brooklyn, New York 11201

By:    s/ James R. Cho
    James Cho
    Assistant United States Attorney
    (718) 254-6519
    james.cho@usdoj.gov

    ROGER J. GURAL
    Trial Attorney
    Office of Consumer Litigation
    U.S. Department of Justice
    450 Fifth Street, N.W.
    Washington, D.C. 20001
    (202) 616-0219

OF COUNSEL

DENNIS C. KACOYANIS
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, Maryland 20814
(301) 504-7587